# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| PHILIP TAYLOR | Civil Action No. 6:22-0217 |
| versus | Judge Robert R. Summerhays |
| SOUTH LA CONTRACTORS, LLC, ET AL. | Magistrate Judge Carol B Whitehurst |

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, are two motions for partial dismissal, as follows: (1) Defendant Bradford Melancon's Motion for Partial Dismissal under Federal Rule of Civil Procedure 12(b)(6) [Doc. 15], and (2) Defendant South LA Contractors, LLC's Motion for Partial Dismissal under Federal Rule of Civil Procedure 12(b)(6) [Doc. 16]. Both motions are opposed by the plaintiff, Philip Taylor [Doc. 27].[1] For the following reasons, it is RECOMMENDED that Bradford Melancon's Motion for Partial Dismissal under Federal Rule of Civil Procedure 12(b)(6) [Doc. 15] be DENIED, and South LA Contractors, LLC's Motion for Partial Dismissal under Federal Rule of Civil Procedure 12(b)(6) [Doc. 16] be DENIED, as explained hereinbelow.

---

[1] The plaintiff opposes both motions to dismiss in one brief, Doc. 27.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The instant lawsuit arises out of an employment relationship between the plaintiff, Philip Taylor ("Taylor") and South LA Contractors, LLC ("SLC"). Defendant Melancon is the president of SLC. In his Complaint, the plaintiff alleges that he began working for SLC and Melancon in August 2020, at a pay rate of $2,500 per week. Plaintiff alleges that he last day worked for SLC on October 8, 2021, but that SLC has failed to pay his wages for his last week of work, ending on October 8, 2021. The plaintiff also alleges that he accrued three weeks of vacation time during his employment, that he did not take any vacation time during his employment, and that SLC owes him for three weeks accrued as well as unused vacation, valued at $7,500.00.

Plaintiff filed suit against SLC and Melancon on January 25, 2022, alleging claims under the Fair Labor Standards Act ("FLSA"), 2 U.S.C. §206 and the Louisiana Wage Payment Act ("LWPA"), La. Rev. Stat. §23:631-632, for failure to pay wages owed to him. He seeks an award of all unpaid wages; liquidated damages pursuant to 29 U.S.C. § 216(b); attorney's fees and costs of suit; and damages and penalties under the LWPA.

Melancon filed a motion to dismiss, seeking dismissal of the plaintiff's claims on grounds the plaintiff has no claim against him individually under the LWPA, and alternatively, on grounds that, to the extent the plaintiff is alleging failure to pay

claims under both the FLSA and the LWPA, the FSLA claims preempt the plaintiff's claims under the LWPA. SLC filed its own motion to dismiss, seeking dismissal of the plaintiff's LWPA claims on grounds they are preempted by the FLSA.

## LAW AND ANALYSIS

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that

discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

**B. Analysis**

**1. Individual liability under the LWPA**

Melancon filed a motion to dismiss, seeking dismissal of the plaintiff's LWPA claims alleged against him individually on grounds Melancon cannot be held personally liable under the LWPA. After review of the record and the governing jurisprudence, the undersigned concludes that this argument is without merit.

A Louisiana limited liability company (LLC) is a separate legal entity from its members. *Fausse Riviere, L.L.C. v. Snyder*, 211 So. 3d 1188, 1192–93 (La. App. 1st Cir. 2/15/17), *citing* La. Civ. Code art. 24;[2] *see also Charming Charlie, Inc. v.*

---

[2] Article 24 of the Louisiana Civil Code states:

> There are two kinds of persons: natural persons and juridical persons.
>
> A natural person is a human being. A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. The personality of a juridical person is distinct from that of its members.

*Perkins Rowe Associates, L.L.C.*, 97 So.3d 595, 598 (La. App. 1st Cir. 7/10/12). An LLC is a recognized juridical person. *See* La. Civ. Code art. 24. Thus, under Louisiana law, individual members of a limited liability corporation ("LLC") are typically insulated from personal liability for the actions of their corporation. *See, e.g.*, *Martin v. Spring Break 83 Prod., LLC*, 797 F. Supp. 2d 719, 724–25 (E.D. La. 2011), *aff'd sub nom. Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247 (5th Cir. 2012). In narrowly defined circumstances, when individual member(s) of a juridical entity, such as an LLC, mismanage the entity or otherwise thwart the public policies justifying treating the entity as a separate juridical person, the individual member(s) have been subjected to personal liability for obligations for which the LLC would otherwise be solely liable. When individual member(s) are held liable under such circumstances, it is said that the court is piercing the corporate veil. *See, e.g., Charming Charlie*, 97 So.3d at 598. *See also Ogea v. Merritt*, 130 So.3d 888, 895 (La. 2013) (Louisiana Supreme Court acknowledges that personal liability could be imposed on an LLC member under the jurisprudential doctrine of piercing the corporate veil, but does not further address the doctrine, because it was neither relied upon by the lower courts nor invoked by the plaintiff).

In order to hold an individual liable for his or her actions as an agent of the corporation, the plaintiff must successfully pierce the corporate veil. Only exceptional circumstances warrant disregarding the concept of a corporation or LLC

5

as a separate entity, as the action of piercing the corporate veil is disfavored and allowed only under exceptional circumstances. *Riggins v. Dixie Shoring Co., Inc.*, 590 So.2d 1164, 1168 (La. 1991); *Jones v. Briley*, 593 So.2d 391, 394 (La. App. 1st Cir. 1991) (superseded by statute on other grounds). Moreover, the same policy considerations relevant to a determination of piercing the veil of a corporation also apply to an LLC. *See Charming Charlie, Inc.,* 97 So.3d at 598.

Louisiana courts have set forth four general circumstances that must be satisfied before a court will pierce the corporate veil. First, a court will pierce the corporate veil if a third party is a victim of fraud, breach of professional duty, negligence, or another wrongful act by the individual member of the LLC. *Spring Break 83 Prod., LLC*, 797 F. Supp. 2d at 724-25. Second, a court will pierce the corporate veil if the members of the LLC use the corporate form to "'defeat public convenience, justify wrong, protect fraud, or defend crime.'" *Id., citing Glazer,* 431 So.2d at 757, *quoting U.S. v. Milwaukee Refrigerator Transit Co.,* 142 F. 247, 255 (E.D.Wis.1905). Third, a court will pierce the corporate veil if adherence to the corporate form would clearly result in inequity. *Id.*, *citing Watson v. Big T Timber Co.,* 382 So.2d 258 (La. App. 3rd Cir. 1980); *Liberto v. Villard,* 386 So.2d 930 (La. App. 3rd Cir. 1980); *Smith v. Moore,* 347 So.2d 316 (La. App. 4th Cir. 1977). Fourth, a court will pierce the corporate veil if it finds evidence of misuse of corporate privilege. *Id., citing Glazer,* 431 So.2d at 758.

6

The plaintiff identifies the existence of two of the four exceptions at play in this case. First, the plaintiff has pled the following facts: Melancon is "the sole owner and managing member of South LA Contractors, LLC.; he "acts, or has the power to act, on behalf of the company," and he "sets company-wide pay practices and policies, including the policies complained of herein;" the plaintiff made personal, specific demand for unpaid wages and vacation time to Melancon, by text message and by certified mail; and Melancon did not respond, nor did he pay the plaintiff.[3] The plaintiff argues that these facts are clearly sufficient to show that a third party (here, the plaintiff) was subject to a "breach of professional duty, negligence, or another wrongful act by the individual member of the LLC." Second, the plaintiff argues that when his process server went to SLC's headquarters, the server found it abandoned and empty. The plaintiff further argues that on the same day this lawsuit was filed, Melancon started a new LLC, Red Stag Construction, LLC, and apparently switched operations (and potentially assets) to the new company. The plaintiff argues that these actions, along with the existence of "numerous other lawsuits pending against South La. Contractors, LLC," suggest a possible misuse of the corporate privilege and/or a situation where strictly applying the corporate shield would result in inequity.

---

[3] *See* Complaint, Doc. 1, at ¶¶12-13, ¶¶19-21.

The plaintiff argues that the facts he has pled are sufficient to withstand the instant motion under the theory of notice pleading and argues that whether he is able to prove the circumstances justifying a piercing of the veil is a matter reserved for trial, or at least, until after discovery. Indeed, in order to state a claim a federal complaint need not set forth every theory of the case or every applicable exception to every general rule in order to survive a Rule 12(b)(6) motion, to wit:

> [A] complaint need only recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 8 thus sets out a "low bar" to evaluate the sufficiency of a claim, requiring only that a plaintiff's pleadings "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Gen. Elec. Capital Corp. v. Posey,* 415 F.3d 391, 396 (5th Cir.2005) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). Accordingly, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *McManus v. Fleetwood Enters., Inc.,* 320 F.3d 545, 551 (5th Cir.2003) (internal quotation omitted). A complaint for negligence need not "parse the negligence allegation into separate elements," *Posey,* 415 F.3d at 396, nor is it required to "correctly specify the legal theory" giving rise to the claim for relief, *McManus,* 320 F.3d at 551.

*Gilbert v. Outback Steakhouse of Fla. Inc.*, 295 F. App'x 710, 713 (5th Cir. 2008)

In the instant case, the undersigned concludes that the plaintiff has put Melancon on notice of his claim for individual liability under the LPWA. Sufficient factual allegations have been pled to give Melancon fair notice of what the plaintiff's claim is and the grounds upon which it rests. Whether the plaintiff can prove this claim or survive a dispositive motion addressed to this specific issue is yet to be

8

seen. Fact-based assertions that go to the merits of a plaintiff's claims are reserved for summary judgment. *See, e.g., Kingsbery*, 2021 WL 1909727, at *5; *see also White v. U.S. Corrections, LLC*, 996 F.3d 302, 210 (5th Cir. 2021) (citation omitted) ("the 'determination as to whether an employee is exempt under the [FLSA] is primarily a question of fact' typically better suited for summary judgment."). Thus, at this juncture of the litigation, the adequacy of the factual allegations underpinning an individual liability claim against Melancon is established, and the motion to dismiss this claim at this time is DENIED.

### 2. Preemption under the FLSA

Both Melancon and SLC argue that, to the extent the plaintiff is alleging failure to pay claims under both the FLSA and the LWPA, the FSLA claims preempt the plaintiff's state law claims under the LWPA.

The statutory schemes of the FLSA and the LWPA are different, and they give rise to different, but sometimes overlapping, claims. The FLSA sets a minimum wage and mandates that employers pay their hourly employees one and a half times their regular rate of pay for all hours worked in excess of 40 hours per week. *Kingsbery v. Paddison*, 2021 WL 1909727, at *4 (E.D. La. May 12, 2021), *citing* 29 U.S.C. §207(a)(1); *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 572 (E.D. La. 2008). Thus, an employer violates the FLSA if it fails to pay covered employees a

9

minimum wage of $7.25 per hour or fails to pay covered employees at least one and one-half times their normal rate for hours worked in excess of 40 hours per week. 29 U.S.C. §§206, 207. *Knaps v. Quality Refractory Serv., Inc.*, 2021 WL 125932, at *2 (E.D. La. Jan. 13, 2021). In order to state a claim for unpaid overtime or minimum wages under the FLSA, a plaintiff must plead: "(1) that there existed an employer-employee relationship during the unpaid ... periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime [or minimum] wage requirements; and (4) the amount of overtime [or minimum wage] compensation due." *Knaps*, 2021 WL 125932, at *2 (E.D. La. Jan. 13, 2021), *citing Johnson v. Heckmann Water Resources, Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

The Louisiana Wage Payment Act is broader in scope and obliges an employer promptly to pay an employee *earned wages* due upon the employee's discharge or resignation. *Kingsbery*, 2021 WL 1909727, at *5–6, *citing Newton v. St. Tammany Fire District No. 12*, 318 So.3d 206, 211 (La. App. 1st Cir. 2/19/21) ("The main purpose of the wage payment law is to compel an employer to pay the earned wages of an employee promptly after [her] dismissal or resignation and to protect discharged Louisiana employees from unfair and dilatory wage practices by employers."). Vacation pay is considered an amount then due in accordance with the employer's vacation policy if the employee is eligible, has accrued vacation time

10

with pay, and the employee has not been compensated or taken the vacation time as of the date the employment terminates. *Id.*, *citing* 23:631(D)(1). Thus, the LWPA punishes employers who fail to promptly pay their former employees; in addition to penalty wages, the LWPA provides for an award of reasonable attorney fees, provided that certain conditions are met. *Id., citing Bergeron v. Ochsner Health System*, 2017 WL 3648451, at *3 (E.D. La. Aug. 24, 2017) (citation omitted).

To be clear, "[u]nlike the FLSA[,] the Louisiana statute at issue, the LWPA, does not establish a minimum wage or overtime protection." *See Bennett v. McDermott Int'l, Inc.*, 855 Fed.Appx. 932, 935 (5th Cir. 2021) (unpublished, *per curiam*). The LWPA "provides that contracted-for wages -- 'the amount then due under the terms of employment' -- must be paid to an employee within a certain time frame after termination or resignation." *Id.* at 935. "To prove 'terms of employment,' a plaintiff need not show a written agreement existed; a 'normal procedure' or 'internal policy' will suffice." *Id.* "To state a claim for unpaid wages under the LWPA, an employee must allege [1] that [the defendant] was her employer, [2] that the employee/employer relationship ceased to exist, [3] that at the time that the employee/employer relationship ended she was owed wages, and [4] that [the defendant] failed to submit the owed wages within the statutorily mandated 15 days." *Bergeron*, 2017 WL 3648451, at *2 (citation omitted).

11

Review of the Complaint shows that the plaintiff alleges two claims: (1) an FLSA claim under 29 U.S.C. ¶206 for failure to pay minimum wage, and (2) a LWPA claim under La. Rev. Stat. ¶¶23:631-32 for failure to pay all wages owed to him, as well as accrued vacation pay, plus penalty wages, attorneys' fees, and costs. In the instant motion, the defendants seek dismissal of the plaintiff's LWPA claim, arguing that the plaintiff cannot recover unpaid *overtime* wages under both the FLSA and the LWPA. However, in the instant case, the plaintiff is not seeking overtime wages under either the federal or state statute. Rather, the plaintiff's claim under the FLSA is for failure to pay him a *minimum wage* for the total number of hours worked, and his LWPA claim is for all amounts he is owed – that is, amounts that exceed the minimum wage – plus, accrued vacation.[4]

In *Tillman v. Louisiana Children's Med. Ctr.*, 2017 WL 1399619, at *1 (E.D. La. Apr. 19, 2017), the plaintiff, a PBX operator at New Orleans East Hospital, alleged that she and others similarly situated were owed unpaid minimum wages and overtime from their employers, alleging that a half-hour meal break was deducted from every day that she worked, despite the fact that she was not allowed a meal break. The plaintiff brought a claim for unpaid wages under the FLSA as well as

---

[4] It appears that the plaintiff is alleging he was engaged in interstate commerce as part of his employment. *See* Complaint, Doc. 1, at ¶¶ 9, 11. The undersigned acknowledges that the FLSA overtime provisions preempt Louisiana state law for employees engaged in interstate commerce. *Kidder v. Statewide Transport, Inc.*, 129 So.3d 875, 880 (La. App. 3rd Cir. 2013). However, as stated hereinabove, the plaintiff is not seeking overtime wages under either the federal or state wage statutes.

state law final wage payment claims. *Id.* The defendants filed a motion to dismiss under Rule 12(b)(6), arguing, *inter alia*, that the FLSA preempts the LWPA. *Id.* at *3. Plaintiff argued that her LWPA claims were not preempted because she was seeking recovery of the amount that she was not paid over and above minimum wage, and the Court agreed, finding:

> The language of the LWPS "is unambiguously broad in scope; it mandates that an employer pay any amount that an employee justifiably earns under the terms of his employment." The FLSA, on the other hand, requires only that an employer pay its employees a minimum wage as set by the Act and does not address the failure to pay agreed-upon wages. Accordingly, [p]laintiff is entitled to seek the amount she is owed over and above minimum wage through the LWPS, and her claim is not preempted.

*Id.* at *3 (internal citations omitted), *citing Hendrix v. Delta Air Lines, Inc.*, 234 So. 2d 93, 95 (La. App. 4th Cir. 1970) ("The federal law makes no provision for or against penalties for mere failure to pay admittedly due agreed-upon wages promptly upon termination of employment. We conclude there is no preemption on this question by the Fair Labor Standards Act...."). *See also Kingsbery*, 2021 WL 1909727, at *6 (where plaintiff sought not just overtime wages which are the object of her FLSA claim, but, rather, also sought unpaid wages and accrued vacation under the LWPA, the court found the LWPA claim, so limited, was not preempted); *see also England v. Adm'rs of the Tulane Educ. Fund*, No. 16-3184, 2016 6520146 (E.D. La. Nov. 3, 2016 ) (LWPA claim for unused vacation, paid time off, sick days, and paid holidays was not preempted); *Bergeron v. Ochsner Health Sys.*, No. 17-519,

13

2017 WL 3648451 (E.D. La. Aug. 24, 2017) (noting that the plaintiff's LWPA claim was limited to recover unpaid hourly wages involving workweeks that did not exceed 40 hours).

Having concluded that the plaintiff is not seeking overtime pay under either the federal or state statute and considering that he seeks minimum wage payments under the FLSA and contractually agreed-upon wages and accrued vacation under the LWPA, the undersigned finds that the plaintiff's LWPA claims are not preempted by the FLSA.

Considering the foregoing,

**IT IS RECOMMENDED** that Bradford Melancon's Motion for Partial Dismissal under Federal Rule of Civil Procedure 12(b)(6) [Doc. 15] be DENIED, and that South LA Contractors, LLC's Motion for Partial Dismissal under Federal Rule of Civil Procedure 12(b)(6) [Doc. 16] be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 30th day of September, 2022 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE