UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| PHILIP TAYLOR | CASE NO. 6:22-CV-00217 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| SOUTH LA CONTRACTORS LLC ET AL | MAGISTRATE JUDGE CAROL B. WHITEHURST |

MEMORANDUM RULING

This matter is presently before the Court on the Complaint filed by Philip Taylor ("Plaintiff") against South LA Contractors LLC ("SLC") and Bradford Melancon ("Melancon") asserting claims pursuant to the Fair Labor Standards Act ("FLSA") and the Louisiana Wage Payment Act ("LWPA"). A bench trial on the matter was held on October 2, 2023 and the parties have now submitted post-trial briefing.

I.
FACTUAL BACKGROUND

Melancon is the sole owner and managing member of SLC, a construction company based in Scott, Louisiana.[1] Plaintiff began working for SLC on August 11, 2020[2] as a salaried project manager.[3] Plaintiff's pay rate was set at $2,500 per week and remained at that level until the end of his employment.[4] Plaintiff's last day worked for SLC was October 8, 2021.[5] Plaintiff testified that at the time he was hired by SLC, he advised Melancon that he needed three weeks' vacation, a company car, and a computer before he would agree to accept the job.[6] Melancon accepted those

---

[1] Plaintiff's Ex. 1; Trial Transcript at 55-56.
[2] Tr. at 11.
[3] Tr. at 8-9.
[4] Plaintiff's Ex. 5; Tr. at 13.
[5] Tr. at 25-26.
[6] Tr. at 12.

1

terms.[7] Plaintiff was provided with a company car; he was not initially provided with a computer and instead used his own personal computer.[8] Plaintiff's computer crashed during the course of his employment and he requested that Melancon provide him with a replacement computer, which Melancon provided.[9] On October 8, 2021, Plaintiff travelled to SLC's office to pick up his paycheck for the pay period ending October 1, 2021,[10] but was told that the paycheck was not available.[11] Plaintiff called Melancon to inquire about the paycheck and Melancon advised him that he was not going to pay Plaintiff anymore because "he had already paid him more than he was worth."[12] Plaintiff then texted Melancon, stating that he was owed five (5) weeks of pay for the weeks ending October 1 and 8, 2021, and three weeks of unused vacation pay.[13] SLC subsequently issued a paycheck covering one week of wages on October 18, 2021.[14] Plaintiff never received any further payments from SLC.[15]

Melancon testified that Plaintiff was paid all of the wages that he was due and, specifically, that the paycheck issued for the week ending October 1, 2021, covered that specific pay period and the subsequent payment (the October 19th paycheck) covered the final week of Plaintiff's employment (the week ending October 8th).[16] Plaintiff, however, testified that his pay "was always a week behind" such that the paycheck issued on October 1, 2021, actually covered the *prior* week (the pay period ending September 29th) and the final paycheck covered the week ending October

---

[7] Tr. at 13-14.
[8] Tr. at 28-29.
[9] *Id.*
[10] According to the copies of paystubs provided, the checks issued each Friday covered the period of the prior Thursday to Wednesday so the check issued on Friday, October 1, 2021 covered the pay period of September 23-29, 2021.
[11] Tr. at 30.
[12] *Id.*
[13] Tr. at 31-32; Plaintiff's Ex. 4.
[14] Tr. at 33.
[15] Tr. at 35.
[16] Tr. at 63.

1st; accordingly the week of October 8th remained unpaid.[17] Plaintiff submitted copies of paystubs reflecting a starting date of August 20, 2020 until the pay period of September 16-22, 2021.[18] The pay stubs submitted by Plaintiff did not contain every weekly period during that term. Defendant submitted paystubs reflecting each week during that same time period with an additional paystub for the pay period September 23-29, 2021.[19]

With regard to the vacation pay, Plaintiff testified that Melancon agreed to his request for three weeks paid vacation at the time his employment commenced.[20] Melancon testified that he never agreed to vacation time for Plaintiff or any other employee.[21] During the exchange of text messages between Plaintiff and Melancon following his termination, Melancon replied "first off 3 weeks vacation it applies after a year don't make this worst [sic] than it's got to be."[22]

## II.
## LAW AND ANALYSIS

### A. Jurisdiction.

Defendants argue that Plaintiff failed to prove that the FLSA applies to this case because Plaintiff failed to establish that SLC engaged in "commerce" as that term is defined under the FLSA. The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." Further, Section (s) of the same code provision defines "Enterprise engaged in commerce or in the production of goods for commerce" to mean:

> an enterprise that— (A) (i)has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for

---

[17] Tr. at 17.
[18] Plaintiff's Ex. 5.
[19] Defendant's Ex. 2.
[20] Tr. at 13-14.
[21] Tr. at 63-64.
[22] Plaintiff's Ex. 4.

commerce by any person; and (ii)is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)."

Accordingly, in order for a wage claim to be governed by FLSA, the employee must prove that his employer is engaged in commerce and the annual gross volume of business equals or exceeds $500,000. In the joint Proposed Pretrial Order, the parties stipulated to the jurisdiction of the Court under the FLSA.[23] Further, in their Answers, SLC and Melancon each admitted that "Defendants' annual gross volume of sales made or business done has exceeded $500,000 for each year during the relevant time period."[24] As to the commerce requirement, the Fifth Circuit has held that:

> Our precedent interprets these requirement broadly, finding that "any regular contact with commerce, no matter how small, will result in coverage."
>
> The record establishes that the DSWs satisfy both enterprise coverage requirements. As workers for BRR, the DSWs handled goods that "moved in or produced for commerce." By the company's own admission, the DSWs dealt with medications, cleaning supplies, and food products—all of which are goods moved in commerce. [25]

In the precent case, the testimony establishes that SLC used equipment including computers, smart phones, trucks and construction equipment such as bulldozers, excavators, stabilizers and dump trucks.[26] As in *Badon,* these are items "moved in commerce." The record thus establishes by a preponderance of the evidence that SLC was engaged in commerce and that the FLSA applies.

---

[23] ECF No. 98.
[24] ECF No. 24 and 25.
[25] *Badon, et al, v. Berry's Reliable Resources, LLC,* 2024 WL 4540334 (5th Cir. 2024) (quoting *Marshall v. Victoria Transp. Co., Inc.*, 603 F.2d 1122, 1124 (5th Cir. 1979)).
[26] Tr. at 10 and 65.

### B. Unpaid Wages.

The Court now turns to Plaintiff's unpaid wage claim under the FLSA. Plaintiff testified that he started work with SLC on August 11, 2020,[27] and was terminated on October 8, 2021.[28] Melancon testified that, while Plaintiff was officially terminated on October 8, 2021, he had not actually performed work for SLC for the two prior weeks. Melancon advised Plaintiff that he intended to terminate him but agreed to continue paying him for those two weeks.[29] Based upon the testimony and evidence in the record, the Court finds that Plaintiff was not terminated until October 8, 2021. Accordingly, Plaintiff's employment with SLC lasted from August 11, 2020 through and including October 8, 2021. This term of employment was 423 days—or 60 weeks and three (3) days. Plaintiff testified that after he started work on August 11th he was given a handwritten paycheck on August 21, 2020; he was then paid weekly for his work after August 21st.[30] Plaintiff alleges that his pay checks were always a week late but Melancon testified that the paychecks did not run late.[31] The parties each submitted copies of pay stubs.[32] The exhibit submitted by Plaintiff omits some periods of time during Plaintiff's tenure at SLC while the exhibit submitted by Defendant covers all dates during Plaintiff's employment including nine checks marked as void. As Plaintiff did not testify as to any periods of time during which he received no compensation prior to October 1st, the Court finds the Defendant's exhibit to be more accurate and complete. Defendant's exhibit also includes copies of two returned checks— dated October 1, 2021 and October 18, 2021—which had been signed and deposited by Plaintiff. Plaintiff testified that the October 1, 2021 check covered the week prior to that date and the October 18, 2021 check,

---

[27] Tr. at 11.
[28] Tr. at 25.
[29] Tr. at 58.
[30] Tr. at 38.
[31] Tr. at 63.
[32] Plaintiff's Exhibit 5 and Defendant Exhibit 2.

made after Plaintiff's demand, covered the week of October 1, 2021. Melancon testified that the October 1, 2021 check covered the week of October 1, 2021 with the October 18, 2021 check covering the week of October 8, 2021.[33]

As the Court noted above, the term of Plaintiff's employment with SLC was a total of 423 days, which amounts to 60 weeks plus 3 days. Defendant's Exhibit 2 shows a total of 68 pay stubs, with 9 of those pay stubs being marked void for a total of 59 pay stubs.[34] In addition, the pay stubs show a total year-to-date payment of $147,500 for 2020 and 2021, which represents 59 payments of $2,500 per week (excluding the October 18th paycheck). The paycheck issued and cashed on October 18, 2021 would bring the total weekly payments to 60 weeks, the total number of weeks that Plaintiff claimed he was employed by SLC. Further, Plaintiff testified that he was paid by a handwritten check on August 21, 2020 before the weekly paychecks and pay stubs commenced. While the Court was not provided with a copy of that check—nor is the amount of the check in the record—it is reasonable to infer that the handwritten check covered the three days over and above the 60 weeks Plaintiff worked for SLC. Accordingly, the Court finds that Plaintiff did not meet his burden of proving that SLC failed to pay him for the entirety of the time he was employed by SLC. Plaintiff, therefore, takes nothing on his FLSA claim

However, under the LWPA, SLC's final payment made on October 18, 2021 was untimely. As the parties agree that Plaintiff was paid weekly, under the LWPA, that final payment should have been made no later than October 15, 2021 since the statute requires it to be made "on or before the next regular payday for the pay cycle during which the employee was working at the

---

[33] Tr. at 63.
[34] Defendant Exhibit 2.

time of separation or no later than fifteen days following the date of discharge, whichever occurs first."[35] That untimely payment, therefore, violates the LWPA.

### C. Vacation Pay.

Next, Plaintiff argues that he was owed payment for his three weeks of vacation time. The Plaintiff testified that he was promised three weeks of vacation time as a condition of his employment. Melancon testified that he never agreed to any vacation time for Plaintiff or any other employee. Although the parties present contradictory testimony regarding vacation time, the parties do not dispute that Melancon stated "first off 3 weeks vacation it applies after a year don't make this worst [sic] than it's got to be," in response to Plaintiff's demand that he be paid for unused vacation time.[36] Melancon testified that he did not intend to promise Plaintiff vacation pay if he worked for SLC in excess of one year; rather, Melancon was expressing frustration that Plaintiff would request vacation time.[37] The Court does not find Melancon's testimony credible on this issue. The text message and the testimony in the record indicate that Melancon had agreed to pay Plaintiff three weeks of vacation time but that he did not believe that Plaintiff had been employed by SLC for a year at that time. The record reflects that, at the time of Plaintiff's termination, he had been employed at SLC for over a year.

The Court finds that Plaintiff has established by a preponderance of the evidence that the parties agreed that Plaintiff would receive three weeks of paid vacation time as a term of Plaintiff's employment. As Plaintiff had not taken any vacation time, payment for that vacation time was considered an amount due under the LWPA.[38]

---

[35] La. Rev. Stat. § 23:631(A).
[36] Plaintiff's Ex. 4.
[37] Tr. at 64.
[38] La. Rev. Stat. § 23:631(D).

### D. Liability of Melancon Individually.

Plaintiff argues that Melancon and SLC are jointly liable for the wages and vacation time due to him. First, Plaintiff argues that, under the FLSA, Melancon would be considered an employer under the broad definition of that term under Fifth Circuit precedent. As the Court has found that no wages were due, there is no liability for either SLC or Melancon under the FLSA.

Next, Plaintiff argues that Melancon is personally liable under the LWPA because there are grounds to "pierce the corporate veil" of SLC. Plaintiff was employed by SLC, which is a Louisiana limited liability company ("LLC"). Melancon was the sole member of the LLC. A Louisiana LLC is a separate legal entity from its members.[39] An LLC is also recognized under Louisiana law as a distinct juridical person.[40] Accordingly, under Louisiana law, individual members of an LLC are generally insulated from personal liability for the debts or liability incurred by the LLC.[41] However, in exceptional circumstances, individual members of an LLC may be subject to personal liability for the obligations of the LLC—in other words "piercing the veil" of the LLC.[42]

Piercing the corporate veil is disfavored and allowed only under exceptional circumstances.[43] The same policy considerations relevant to a determination of piercing the veil of a corporation also apply to an LLC.[44] Louisiana courts have set forth four general circumstances

---

[39] *Fausse Riviere, L.L.C. v. Snyder*, 211 So. 3d 1188, 1192–93 (La. App. 1st Cir. 2/15/17), citing La. Civ. Code Art. 24; *see also Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C.*, 97 So.3d 595, 598 (La. App. 1st Cir. 7/10/12).
[40] *See* La. Civ. Code Art. 24.
[41] *See, e.g., Martin v. Spring Break 83 Prod., LLC*, 797 F. Supp. 2d 719, 724–25 (E.D. La. 2011), aff'd sub nom. *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247 (5th Cir. 2012).
[42] *See, e.g., Charming Charlie*, 97 So.3d at 598. *See also Ogea v. Merritt*, 130 So.3d 888, 895 (La. 2013) (Louisiana Supreme Court acknowledges that personal liability could be imposed on an LLC member under the jurisprudential doctrine of piercing the corporate veil, but does not further address the doctrine, because it was neither relied upon by the lower courts nor invoked by the plaintiff).
[43] *Riggins v. Dixie Shoring Co., Inc.*, 590 So.2d 1164, 1168 (La. 1991); *Jones v. Briley*, 593 So.2d 391, 394 (La. App. 1st Cir. 1991) (superseded by statute on other grounds).
[44] *See Charming Charlie, Inc.*, 97 So.3d at 598.

that must be satisfied before a court will pierce the corporate veil. First, a court will pierce the corporate veil if a third party is a victim of fraud, breach of professional duty, negligence, or another wrongful act by the individual member of the LLC.[45] Second, a court will pierce the corporate veil if the members of the LLC use the corporate form to "'defeat public convenience, justify wrong, protect fraud, or defend crime.'"[46] Third, a court will pierce the corporate veil if adherence to the corporate form would clearly result in inequity.[47] Fourth, a court will pierce the corporate veil if it finds evidence of misuse of corporate privilege.[48]

In the instant case, Plaintiff alleges the first circumstances applies, namely that a third party (Plaintiff) is the victim of fraud or similar wrongful conduct as a result of Melancon's refusal to pay Plaintiff's wages and vacation time. Plaintiff also argues that Melancon "abused the corporate form" by forming a new LLC on the same day the current lawsuit was filed.

The Court has reviewed the evidence submitted and finds that Plaintiff failed to establish the exceptional circumstances necessary to pierce the corporate veil and hold Melancon personally responsible under Louisiana law. The record does not support a finding that Melancon engaged in fraud in connection with the payment of Plaintiff's wages—indeed, the Court has found that Plaintiff's wages were fully paid. The Court further finds that Plaintiff has not established, by a preponderance of the evidence, that Melancon committed fraud or similar wrongful conduct in connection with the unpaid vacation time. Finally, while Plaintiff presented evidence that Melancon formed a separate LLC, call Red Stag, and evidence that Red Stag operated dump trucks,

---

[45] *Spring Break 83 Prod., LLC*, 797 F. Supp. 2d at 724-25.
[46] *Id.*, citing *Glazer*, 431 So.2d at 757, quoting *U.S. v. Milwaukee Refrigerator Transit Co.*, 142 F. 247, 255 (E.D.Wis.1905).
[47] *Id.*, citing *Watson v. Big T Timber Co.*, 382 So.2d 258 (La. App. 3rd Cir. 1980); *Liberto v. Villard*, 386 So.2d 930 (La. App. 3rd Cir. 1980); *Smith v. Moore*, 347 So.2d 316 (La. App. 4th Cir. 1977).
[48] *Id.*, citing *Glazer*, 431 So.2d at 758.

some of which were owned by SLC, he failed to present sufficient evidence that Melancon's actions amount to fraud.

Plaintiff's claims against Melancon personally based on "piercing the corporate veil" must therefore be dismissed.

### E. Penalty Claim and Attorney Fees.

The LWPA provides for the payment of penalty wages to an employee who does not receive payment for accrued wages. Specifically, the statute provides that:

> A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.
>
> B. When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.
>
> C. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.[49]

This provision is a penal statute and must be strictly construed.[50] Penalty wages are not to be absolutely imposed when the facts indicate that there is an equitable defense.[51] However, it is only a good-faith, non-arbitrary defense to liability for unpaid wages which will permit the courts to

---

[49] LSA–R.S. 23:632.
[50] *Magee v. Engineered Mechanical Services, Inc.*, 415 So.2d 277, 278–279 (La.App. 1st Cir.), writ denied, 420 So.2d 455 (La.1982).
[51] *Id.* at 279.

excuse the employer from the imposition of penalty wages.[52] Whether or not there is an equitable defense to penalty wages depends on the particular facts of each case.[53]

In the instant case, there are two separate failures of SLC to pay Plaintiff. First, the final week of payment was made ten days after it was due. Since Plaintiff was paid weekly, that payment should have been made within seven days. Second, SLC has never paid Plaintiff for his unused vacation time. As to the untimely payment of Plaintiff's last week of wages, the Court finds that SLC's actions were in good faith. Melancon testified that he believed he had fourteen days to make that final payment and he did make that payment in that time frame. The Court finds no basis to question Melancon's testimony in that regard.

As to the vacation pay, however, the Court finds that the text message sent from Melancon to Plaintiff clearly indicates that Melancon was aware that Plaintiff was owed vacation pay, which was never paid. Accordingly, the record does not support, by a preponderance of the evidence, that SLC is entitled to the good faith, non-arbitrary defense to liability for the unpaid vacation time. As such, LSA–R.S. 23:632 requires the payment of penalty wages as well as reasonable attorney fees.

### F. SLC's Counterclaim.

SLC claims that Plaintiff failed to return the laptop computer which SLC purchased for Plaintiff to use during his employment. Plaintiff claims that he was never asked to return the laptop and further that the laptop was purchased by SLC to replace Plaintiff's personal laptop which he had previously used during his employment when that laptop stopped working. The Court agrees with Defendants that the laptop was the property of SLC and should have been returned. The Court, however, finds Plaintiff's testimony that SLC never requested that the laptop be returned to be credible. SLC did make demand for the laptop when it filed its counterclaim in this matter on May

---

[52] *Henderson v. Kentwood Spring Water, Inc.*, 583 So.2d 1227, 1232.
[53] *Id.*

11

17, 2022.[54] SLC has not, however, established the value of the used laptop at the time it made demand when Plaintiff failed to return it. Both Plaintiff and Melancon testified that the cost of the new laptop was somewhere between $900 and $1,000. There was no evidence submitted regarding the purchase date of the laptop nor the value of the laptop. Accordingly, the Court finds that SLC has failed to meet its burden of proof as to the Counterclaim. That claim is therefore DISMISSED.

### III.
### CONCLUSION

The Court finds that Plaintiff's claim under the FLSA must be dismissed. Plaintiff is owed the sum of $7,500 in unpaid wages under the LWPA, along with penalty wages and attorney fees under LSA–R.S. 23:632, from SLC. Plaintiff's claims against Melancon individually are dismissed. Within 30 days, Plaintiff shall submit a statement of attorney fees setting forth the reasonable attorney fees requested. The statement shall include an itemization which is sufficiently specific to permit the Court and SLC to determine the reasonableness of the fees requested. Plaintiff shall also submit supplemental proposed findings with respect to penalty wages. If SLC objects to the amount of attorney fees, an objection shall be filed within fourteen days of the filing of the statement. Following the resolution of the amount of attorney fees, the Court will enter a final judgment, which will include the award of penalty wages and attorney fees under the LWPA.

IT IS SO ORDERED.

THUS DONE in Chambers on this 7th day of January, 2025.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[54] ECF No. 25.